UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SNELL,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

No. 14-13661

District Judge Denise Page Hood
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff William Snell ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #27] be GRANTED to the extent that the case be remanded for further administrative proceedings and that Defendant's Motion for Summary Judgment [Dock. #28] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on March 29, 2012, alleging disability as of August 29, 2011 (Tr. 119). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on April 18, 2013 in Flint, Michigan before Administrative Law Judge ("ALJ") Andrew G. Sloss (Tr. 37). Plaintiff, represented by attorney Jeffrey Atkin, testified (Tr. 40-52), as did vocational expert ("VE") Ms. Evarts (Tr. 53-54). On April 25, 2013, ALJ Sloss found Plaintiff not disabled (Tr. 32-33).

On July 22, 2014, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff, represented by counsel, filed suit in this Court on September 22, 2014. *Docket #1.* His counsel withdrew on January 26, 2016. *Docket #21.* Plaintiff is currently represented by John C. Chowning.

## II.  BACKGROUND FACTS

Plaintiff, born September 24, 1965, was 47 at the time of the administrative decision (Tr. 32, 119). He completed 12th grade and took classes toward a nursing degree at a local college (Tr. 139). He worked previously as a cashier and as a cashier/stocker (Tr. 139). He alleges disability as a result of diabetes, a torn left rotator cuff, left ankle pain, anxiety, neuropathy of the lower extremities, hepatosis, rheumatoid arthritis, hypothyroidism, and hyperlipidemia (Tr. 138).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

After graduating from high school, he received training to be a nursing assistant (Tr. 40). He held a current driver's license and was able to drive (Tr. 40). He stopped working in August, 2011 after being terminated following a workplace injury (Tr. 41). He had not filed a worker's compensation claim (Tr. 41). His earlier job as a cashier/stocker entailed ringing up groceries and stocking shelves at night (Tr. 42). The stocking work required him to lift furniture (Tr. 42).

Plaintiff was unable to work due to a torn rotator cuff, Carpal Tunnel Syndrome ("CTS"), diabetes, hypertension, lower extremity neuropathy, arthritis of the left ankle, and anxiety (Tr. 42). Anxiety attacks were characterized by shortness of breath, but were improved with medication (Tr. 42). He received steroid injections for the shoulder condition once every three months (Tr. 42). As a result of CTS, Plaintiff was unable to perform heavy lifting and required two hands to hold a coffee cup (Tr. 43). He required the constant use of wrist braces but had not undergone surgery (Tr. 43). Before he stopped working, he experienced pain using the buttons on the cash register and scanning items (Tr. 44). His lower extremity neuropathy was attributable to diabetes (Tr. 44). He took metformin for diabetes and watched his diet (Tr. 44). He used a brace for the left ankle arthritis, noting that he experienced ankle swelling after standing for extended periods (Tr. 45). He was able to prepare meals that did not require extended standing and shopped for groceries once a month (Tr. 45). He enjoyed swimming but was unable to afford the pool fees (Tr. 45).

Plaintiff began a typical day by giving his mother her medication; then he fed the cat, made breakfast, made the beds, performed light household chores, washed dishes, did laundry, and ate lunch (Tr. 46). After lunch, he took a nap, watched television, then made dinner (Tr. 46). He spent his evening talking to his mother, watching television, and reading (Tr. 46). He ended his day by helping his mother get ready for bed (Tr. 46).

In response to questioning by his attorney, Plaintiff reported that he was unable to stand for more than 15 minutes or sit for more than 20 due to joint stiffness (Tr. 46). He also reported arthritis of both the left ankle and left knee (Tr.46). He stated that the lower extremity neuropathy was worse on the right (Tr. 47). He testified that the neuropathy caused him to lose balance (Tr. 47). He stated that he was unable to walk for more than five feet without a cane (Tr. 48). He experienced constant discomfort and grasping limitations from CTS (Tr. 48). He reported that the rotator cuff condition limited his overhead reaching (Tr. 49). He testified that he required the use of a motorized cart while grocery shopping (Tr. 49). He reported that his most comfortable position was sitting up in bed (Tr. 49). He denied sleep disturbances (Tr. 50). He reported that his medications caused the side effects of drowsiness and concentrational problems (Tr. 50). Despite taking medication for anxiety, he experienced anxiety in crowds and before stressful events (Tr. 51). He testified that the physical strain and level of activity required to be his mother's care giver caused anxiety (Tr. 52).

### B. Medical Records

### 1. Treating Sources

Teresa Sherman, M.D.'s September, 2011 treating records state that Plaintiff experienced anxiety causing the symptoms of concentrational problems, fatigue, irritability, nervousness, panic attacks, sweaty palms, and sleep disruption (Tr. 185, 187, 206). She noted that Plaintiff had not been previously treated for anxiety and exhibited a normal mood and affect (Tr. 185-186, 207). Dr. Sherman's records state that Plaintiff had recently been "[f]ired from his job," but was "glad to be away from work stress" (Tr. 187, 208). In October, 2011, Plaintiff reported "constant" moderate left shoulder pain (Tr. 210). Imaging studies of the left shoulder showed moderate degenerative changes (Tr. 197, 225).

In February, 2012, Plaintiff reported "constant" moderate bilateral wrist pain (Tr. 212). Plaintiff exhibited a full range of motion and motor functioning but positive Phalen's and Tinel's signs on both sides (Tr. 213). Dr. Sherman administered a left shoulder steroid injection (Tr. 213). March, 2012 nerve conduction studies showed mild median neuropathy consistent with bilateral CTS "more pronounced on the right" (Tr. 200, 204, 224). The studies were otherwise negative for abnormalities (Tr. 200). Dr. Sherman's records from the same month note that Plaintiff obtained relief from CTS by wearing a wrist splint and the use of pain relievers (Tr. 216). Plaintiff requested another cortisone shot to the left shoulder (Tr. 194). Plaintiff reported that he had experienced left shoulder pain for at least four years (Tr. 215). Dr. Sherman noted that the condition of diabetes was stable with no complications (Tr.

194, 196). She found that Plaintiff was unable to work, noting the ongoing conditions of ankle joint pain, CTS, a rotator cuff tear with derangement of the shoulder joint, diabetes, hypertension, and foot pain (Tr. 195).

Dr. Sherman's June, 2012 treating records state that Plaintiff reported only intermittent shoulder pain (Tr. 218). She administered a steroid injection to the shoulder without complications (Tr. 219). In August, 2012, Plaintiff reported worsening symptoms of CTS and requested "blood work" and "getting testing for nerve damage" of the lumbar spine (Tr. 238). Upon examination, Plaintiff exhibited bilateral muscle spasms and range of motion limitations (Tr. 229). The following month, nerve conduction studies of the lower extremities were unremarkable (Tr. 232-233).

In March, 2013, Dr Sherman composed a letter on behalf of Plaintiff's application for disability benefits, noting that he experienced the conditions of "generalized anxiety disorder," CTS, diabetic peripheral neuropathy, a torn rotator cuff of the left shoulder, hypertension, and hyperlipidemia (Tr. 234). She opined that Plaintiff was "totally and permanently disabled" (Tr. 234). The following week, she recommended that Plaintiff use an ice pack as needed for shoulder pain and perform stretching exercises (Tr. 236).

### 2. Non-Treating Sources

In June, 2012, Myung Ho Hahn, M.D. performed a non-examining assessment of Plaintiff's physical work abilities, finding that over the course of an eight-hour workday, he could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six

hours; and push and pull without limitation in the lower extremities (Tr. 63). Dr. Hahn found that Plaintiff was limited to occasional ramp or stair climbing, kneeling, and crawling (Tr. 63). He found that Plaintiff could stoop frequently and perform unlimited balancing (Tr. 63). He precluded all climbing of ladders, ropes, or scaffolds (Tr. 63). He found left upper extremity limitations in reaching and limitations in handling on both sides (Tr. 64). He found that Plaintiff should avoid "even moderate exposure to vibration (Tr. 64). Jerry Scokasy, Ph.D. also performed a non-examining review of the treating records, finding that Plaintiff did not experience a severe mental impairment (Tr. 61).

### C. Vocational Testimony

The VE classified Plaintiff's former work as a cashier as exertionally light (exertionally medium as performed) and unskilled[1] (Tr. 53). The ALJ then asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience with the following limitations:

> [C]an perform light work except that he can never climb ladders, ropes, or scaffolds and occasionally can climb ramps or stairs. He can frequently stoop

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

and occasionally kneel, crouch, or crawl. He is limited to frequent handling bilaterally and to frequent reaching with his left, non-dominant upper extremity. He must avoid even moderate exposure to vibration. Could such a person perform the claimant's past work as a cashier? (Tr. 53).

The VE responded that the hypothetical limitations would preclude the job of cashier "as actually performed" by Plaintiff but would allow him to work as a cashier as the job was generally performed in the national economy (Tr. 53). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT"). (Tr.53-54).

### D. The ALJ's Decision

Citing the medical records, ALJ Sloss found that Plaintiff experienced the severe impairments of CTS and "degenerative joint disease of the left shoulder" but that neither condition met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28-29). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [H]e can never climb ladders, ropes or scaffolds, and can occasionally climb ramps or stairs. He can frequently stoop and can occasionally kneel, crouch, or crawl. He is limited to frequent handling bilaterally, and to frequent reaching with his left (nondominant) upper extremity. He must avoid even moderate exposure to vibration (Tr. 29).

The ALJ determined that Plaintiff could perform his past relevant job as a cashier as "actually and generally performed" (Tr. 32). The ALJ rejected Plaintiff's allegations of disabling limitation (Tr. 30-32). He noted that Plaintiff received exclusively conservative treatment for the shoulder condition (Tr. 31). He found the condition of anxiety "non-

severe," noting that Plaintiff obtained good results from prescribed medication and had not been referred for mental health treatment or inpatient hospitalization (Tr. 32). The ALJ noted that Plaintiff was able to perform a wide range of regular activities despite the shoulder and lower extremity problems (Tr. 32). He accorded "little weight" to Dr. Sherman's March, 2013 disability finding, noting that the medical transcript and Plaintiff's self-reported daily activities were consistent with the limitations found in the RFC (Tr. 32).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Degenerative Disc Disease

Plaintiff argues first that the ALJ failed to address limitations created by degenerative disc disease of the lumbar spine. *Plaintiff's Brief,* 10-14, *Docket #27.* Plaintiff points out

that the ALJ cited Dr. Sherman's examination notes showing muscle spasms and a restricted range of lumbar spine motion but erred by neglecting to discuss the condition at StepTwo of the analysis or make a finding as to the degree of limitation caused by the condition. *Id.* at 11 (*citing* Tr. 31, 229).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.,* 773 F.2d at 90 (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). A non-severe impairment is defined as one that does not "significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

Plaintiff's argument that the degenerative disc disease was not adequately addressed is not well taken. While he appears to argue that the condition ought to have been included among the Step Two impairments, substantial evidence supports the conclusion that the condition was not severe. The ALJ observed that nerve conduction studies of the lower extremities in September, 2012 (made in response to Plaintiff's claim of lumber spine limitations) were wholly normal (Tr. 31, 232-233). The record does not contain any imaging studies of the spine. Notably, Dr. Sherman's March, 2013 opinion letter did not include

lumbar disc problems among the conditions contributing to Plaintiff's "disability" (Tr. 234). While Plaintiff characterizes Dr. Sherman's August, 2012 finding of range of motion limitations as a "treating source opinion" entitled to controlling weight, at no time did Dr. Sherman actually opine that the lumbar spine condition caused workplace limitations.

Plaintiff also argues that even if the lumbar spine condition were non-severe, the ALJ was required include mention of the condition at Step Two of the sequential analysis. However, even assuming that an impairment is "severe," an ALJ's failure to acknowledge it at Step Two is harmless error provided that it is addressed at the remaining steps of the sequential analysis. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir.1987); *Fisk v. Astrue,* 253 Fed.Appx. 580, 583-584, 2007 WL 3325869, *4 (6th Cir. November 9, 2007). The ALJ did not mention the condition at Step Two of the analysis, but subsequently acknowledged Plaintiff's allegations of claim of lumbar spine pain and Dr. Sherman's August, 2012 treating observations (Tr. 31). Although Plaintiff claims that there was "no finding" as to whether the condition was severe, the ALJ's subsequent discussion of the condition includes his observation that the nerve conduction studies failed to support Plaintiff's allegations of lumbar back problems (Tr. 31). Because the allegations of lumbar spine problems are unsupported by imaging studies or a treating opinion that the condition created workplace limitations, the failure to mention the condition at Step Two does not warrant a remand.

### B. The RFC

Plaintiff argues second that the RFC found in the administrative opinion does not reflect his true degree of limitation. *Plaintiff's Brief* at 14-18. Plaintiff, in effect, faults the ALJ for overly relying on the opinion of non-examining source Dr. Hahn while improperly discounting Dr. Sherman's treating opinion. *Id.* He argues further that the ALJ failed to note that the absence of aggressive medical treatment was attributable to financial limitations rather than the lack of symptomology. *Id.* at 16. Plaintiff also argues that Dr. Hahn's June, 2012 non-examining findings did not have the benefit of the August, 2012 report of lumbar spine problems. *Id.*

Plaintiff's criticism of the ALJ's "near wholesale adoption" of Dr. Hahn's non-examining findings does not provide grounds for remand. *Plaintiff's Brief* at 16. As discussed by the ALJ, the RFC for a limited range of light work was also supported by Plaintiff's acknowledgment that he was able to dispense medication, prepare meals, perform housework, and shop for his elderly mother (Tr. 30). The ALJ noted that nerve conduction studies of the upper extremities showed either mildly abnormal or wholly normal results (Tr. 31). While Plaintiff argues briefly that the ALJ overlooked Dr. Hahn's finding of upper extremity limitations in pushing and pulling, the ALJ adequately addressed the limitations by precluding Plaintiff from all climbing of ropes or scaffolds and limitations in handling and reaching in the left upper extremity (Tr. 29).

Plaintiff also takes issue with the ALJ's observation that his treatment for the various conditions was conservative (Tr. 31-32), arguing that his ability to procure appropriate treatment was stymied by financial limitations. *Plaintiff's Brief* at 16-17. Pursuant to SSR 96–7p, 1996 WL 374186, *7 (1996), an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." See also SSR 82–59, 1982 WL 31384, *4 (1982)(ALJ required to consider allegations that a claimant is unable to afford the prescribed treatment). In support of this argument, Plaintiff cites his own testimony that he could not afford Carpal Tunnel release surgery (Tr. 43).

However, at the hearing, Plaintiff gave multiple reasons for declining to pursue surgery, stating both that he could not afford it *and* that he did not believe that he would obtain good results (Tr. 43). Moreover, Plaintiff did not claim that Dr. Sherman had recommended surgery but rather, testified that he thought she had "mentioned it" (Tr. 43). Likewise, the treating records do not suggest that Plaintiff's ability to obtain health care was compromised by financial problems. Plaintiff was able to receive fairly regular steroid injections and prescription medicine and was able to undergo the recommended nerve conduction studies. The ALJ noted that none of Plaintiff's conditions had required emergency treatment. While Plaintiff no doubt experienced some degree of financial

-14-

restriction as a result of his work termination, the record shows that the lack of aggressive treatment was attributable to generally mild symptomology rather than financial constraints.

Plaintiff is also unable to show that Dr. Hahn would have found a greater degree of restriction if provided with the newer records documenting the lumbar spine complaints. As discussed above, Plaintiff's August, 2012 allegations of functional limitations resulting from lumbar spine problems are undermined by the nerve conduction studies from the following month. Again, Dr Sherman's March, 2013 opinion letter does not include lumbar spine problems among the conditions contributing to Plaintiff's disability.

### C. The Step Four Findings

In his final argument, Plaintiff takes issue with the ALJ's finding that he could perform his past relevant work as a cashier. *Plaintiff's Brief* at 18-19. He contends that Plaintiff's past relevant work requiring cashiering *and* stocking was a "composite job" which has no listing in the DOT. *Id.*

Plaintiff's argument that he is unable to perform her past relevant work pertains to the ALJ's findings at Step Four of the sequential analysis. At Step Four, a three-prong test must be met in order to find that a claimant can return to her past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2 (1982). As a general rule, the Step Four determination can be supported by the finding that claimant can perform his past relevant

work as "actually performed," or, "as generally required by employers throughout the national economy." SSR 82–61, 1982 WL 31387, *2 (1982). In most cases, the claimant "bears the burden of proving the existence and severity of limitations caused by [the] impairments and the fact that [he] is precluded from performing h[is] past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

Among his former work, Plaintiff listed two of the four jobs as "cashier, stock person" (Tr. 150). His description of the two positions indicates that in both, he divided his time between cashiering and stocking (Tr. 151-153). The "hybrid" positions qualify as composite jobs. Under SSR 82-61, "composite jobs" contain "significant elements of two or more occupations." Because composite jobs have "no counterpart in the DOT," such work should be "evaluated according to the particular facts of each individual case" and may require "the services of a vocational specialist or vocational expert." *Id.*

A finding that the past relevant work is a composite job creates an exception to the rule that the Step Four finding can be supported by the ability to do the job as actually performed or as generally performed in the national economy. SSR 82–61. The Program Operations Manual System ("POMS"), a handbook "produced for internal use at the Social Security Administration, provides that 'a composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work as generally performed in the national economy.'" *Comeau v. Commissioner of Social Security*, 2016 WL 1253315, at *9

(E.D.Mich. March 30, 2016)(Morris, M.J.)(*citing* POMS § DI 25005.020)(internal punctuation omitted). Further, "[a] claimant is only capable of performing a past relevant composite job if he can perform *each of the separate components* of the position." *Id.* (*citing Hansen v. Comm'r of Soc. Sec.,* No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014))(Cox J.)(emphasis added).

Neither the VE's prehearing analysis nor her testimony acknowledges that the positions in question were composite jobs. Despite Plaintiff's report that the two positions required both cashiering and stocking, the VE's vocational analysis classifies the positions only as "cashier" (Tr. 177). At the hearing, she again classified the positions as cashier, despite Plaintiff's written report and testimony that his work required both cashiering and stocking (Tr. 42). The VE provided a DOT code for only the cashier position (Tr. 53). The transcript does not contain any reference to the stocker component of the jobs. Moreover, the VE's stated reliance on the DOT is directly contrary to the POM directive to disregard the DOT in finding that a claimant could do the past relevant composite work as "generally performed" (Tr. 53). *See Comeau, supra,* at *10 (remand warranted in composite job case where VE "limited his responses to a discussion of Comeau's ability to perform work as a dispatcher" but did not address the portion of the job requiring vehicle inspecting).[2]

---

[2]
A finding that Plaintiff could return to his past relevant composite job "as performed," would be permissible provided that substantial evidence supported the conclusion. In fact, the ALJ found that Plaintiff could return to the job "as actually and generally performed" (Tr. 32). However, Defendant concedes that substantial evidence does not support the finding that Plaintiff could return to the job, performed at the medium exertional level. *Defendant's*

The ALJ's reliance on the VE's erroneous Step Four testimony warrants a remand for further proceedings. However, Plaintiff has not presented an "overwhelming" case for disability benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994). Because it cannot be said that "all essential factual issues have been resolved," a remand for further fact-finding, rather than an award of benefits, is appropriate. *Id.*

## VI.   CONCLUSION

For these reasons, I recommend that I recommend that Plaintiff's Motion for Summary Judgment [Dock. #27] be GRANTED to the extent that the case be remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Dock. #28] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

---

*Brief,* 12, fn 1, *Docket #28)*. None of the vocational testimony or other evidence supports the finding that Plaintiff could return to the job, performed at the medium exertional level.

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: April 29, 2016              s/R. Steven Whalen
                                   R. STEVEN WHALEN
                                   UNITED STATES MAGISTRATE JUDGE


### CERTIFICATE OF SERVICE

I hereby certify on April 29, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants April 29, 2016.

                                   s/Carolyn M. Ciesla
                                   Case Manager for the
                                   Honorable R. Steven Whalen